T. ALAN GOLDSBOROUGH *v.* COUNTY TRUST COMPANY OF MARYLAND ET AL.

[No. 44, October Term, 1944.]

*Decided December 8, 1944.*

The cause was argued before MARBURY, C. J., DELAPLAINE, GRASON, MELVIN, CAPPER, and HENDERSON, JJ.

*Wesley E. Thawley* and *William L. Rawls* for the appellant.

*K. Thomas Everngam* and *G. Elbert Marshall* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court of Caroline County, in equity, dismissing the appellant's bill of complaint for an accounting after hearing upon merits. The case was before this Court on demurrer in 180 Md. 59, 22 A. 2d 920, but was remanded without affirmance or reversal to permit further amendment of the bill to restrict the accounting to information which the plaintiff could not otherwise obtain. Appropriate amendments were made, and from the third amended bill, and answer thereto, it appeared that the appellant claimed the right to apply a certain sum, claimed to be due him as commissions from 1920 to 1939, against his obligation upon a mortgage given in settlement of the appellees claim against him on December 31, 1937.

The testimony shows that from 1914 to 1939, the appellant, for many years a Congressman from the First Congressional District and since 1939 a United States District Judge of the District of Columbia, acted as attorney for the Federalsburg Bank, now operated as a branch of the County Trust Company of Maryland, appellee. The other appellee is a subsidiary corporation, and both will be referred to simply as the Bank.

From 1924 to 1939 the appellant was a director of the Bank. In 1929 he borrowed $20,000 from the Bank, secured by collateral valued at $35,000. However, the value of the collateral declined sharply, and although he made one payment of $5,000, in April, 1937, he owed, with interest, $18,506 secured by collateral then worth only about $3500. He was also heavily indebted in other quarters, had borrowed upon his life insurance and the only capital asset he possessed was his home in Denton. He did have considerable income from his law practice, however, as well as his Congressional salary.

On November 4, 1937, Mr. J. Allan Coad, president of the Bank, wrote the following letter to the appellant: "Dear Mr. Goldsborough:

"With further reference to the suggestion made by you in this office today, namely, that your entire obligation to

County Corporation in the amount of approximately $18,000.00 be liquidated upon payment by you of $10,000.00 in cash. I am writing to say that this, while a very liberal concession on the part of County Corporation, is acceptable with the understanding however, that any unpaid bill or bills for legal services performed by you for our Federalsburg branch be considered as a part of the proposed settlement in addition to the $10,-000.00 in cash. In other words, I feel that in addition to the $10,000.000 in cash to be paid by you, any bill or bills for services rendered, including items in process of collection, should be applied to the settlement of this obligation.

"Needless to say, any securities held by us as collateral to your loan will be surrendered to you at the time of settlement.

"Kindly advise me at your earliest convenience as to when we may expect settlement of this item.

"Very truly yours,

"J. Allan Coad,
"President."

Mr. Goldsborough acknowledged this letter, stating that it was necessary for him to consult other creditors, and suggested in a subsequent letter, that the Bank accept $10,000, less his bill for services, but after further negotiations, the parties met on November 22, 1937, in Mr. Coad's office, and a settlement was agreed to.

The appellant testified that the terms of settlement were that he would pay $10,000 and waive a bill for $783.05 which he had sent the Bank for services rendered, which bill included his commission on the collection of a certain judgment. He testified that the settlement did not include any bills for services rendered other than the bill of $783.05, and did not include items in process of collection.

Mr. Coad testified, on the other hand, that the settlement was in strict accord with the terms of his letter of November 4, 1937, and did include any and all bills

for services rendered and items in process of collection. His testimony is corroborated by a memorandum he dictated the same day, and by an entry in the books of account of the Bank made by the Treasurer. This settlement was reported to the Executive Committee and the Board of Directors of the Trust Company, and it was the only settlement authorized or approved by them.

On December 31, 1937, the appellant, with his wife, executed a mortgage in the sum of $5,000 to the appellees, and paid them $5,000 which he borrowed on his Congressional salary. His note was cancelled and the collateral returned. Subsequently, the appellant paid $1,000 and interest to December, 1938, upon the mortgage. About that time, he testified that he learned the Bank was making collections on certain notes on which he had previously entered judgment and demanded that the Bank pay him commissions thereon. The Bank replied that any such claim was covered by the settlement.

According to the pleadings filed in the case, the Bank Collected $29,313.85 over a period of years on judgments entered by the appellant, and upon his theory of the case he claims the right to set off 10 per cent. of this sum against his mortgage indebtedness. The appellant testified that he had an agreement with the Bank whereby he was entitled to receive 10 per cent. of each judgment he entered upon which collection were subsequently made, whether or not he made any efforts to collect. It is conceded that all of the collections in dispute were made by the Bank, and that the Bank did not collect attorney's fees from the debtor where collections were made by it. The Bank contends that the agreement was not to pay 10 per cent. of all collections, but only to pay the attorney in cases where he was specifically authorized and directed to collect; that in many cases entry of judgment was for the sole purpose of securing a lien, and in such cases the attorney was not entitled to anything except the appearance fees.

In the view we take of the case, it is unnecessary to ascertain the exact terms of the original agreement as

to fees, because we think that in any event the matter was concluded by the settlement. The appellant may have thought that he had no claims against the Bank at the time of the settlement except the item of $783.05, but there is abundant evidence of the insistence of the Bank's president upon release of all claims. The appellant was an experienced attorney; Mr. Coad, the Bank's president, was not a lawyer. The latter did not assume the duties of president until April, 1937, and had no knowledge of the prior dealings or agreements of the appellant with the Bank as attorney and director.

There is no evidence of fraud, concealment or bad faith on the part of Mr. Coad; it was his declared purpose from the start of negotiations to effect a general settlement between the parties of a matter with which he was not personally familiar. There was never any written agreement as to fees between the Bank and the attorney; the verbal agreement relied upon by the appellant was alleged to have been made with the former cashier, Mr. Davis, who died in 1935. Mr. Goldsborough was a director during the entire period, and if he had any claims other than the one he brought forward at that time, it was his duty to declare them, and to exclude them from the settlement, if he could get the Bank to agree to that.

There is a presumption that a general settlement, particularly where it is executed in whole or in part includes all matters in controversy and all demands existing at the time between the parties. *Jones, Evidence* (2nd Ed.), Sec. 233; 3 *Encyclopedia of Evidence,* p. 252; *Johnson v. Berdo,* 131 Iowa 524, 106 N. W. 609.

While equity has jurisdiction to set aside settlement agreements on the ground of mistake, the mistake must be mutual, and proved in the most clear and unequivocal manner and to the entire satisfaction of the court. *Hall v. Clagett,* 2 Md. Ch. 151. See also note, 46 L. R. A., N. S., 279.

It may be noted that the appellant does not ask that the settlement be set aside; he seeks to retain the advan-

tage of settlement of a claim of some $18,500 for the sum of $10,000, and assert a claim of set-off, amounting to nearly $3,000, against the unpaid balance of the $10,000. But that would make a new agreement for the parties, and one that was never agreed to by the Bank.

After a careful examination of the record, we find no reason to disagree with the finding of the chancellor in what is essentially a question of fact. We think his finding is supported by the weight of the evidence, and that his action in dismissing the bill was not erroneous.

*Decree affirmed, with costs to the appellees.*